**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

KENNETH GLEN HUNTER,          )
                              )
        Petitioner,           )
                              )     No. CIV 09-47-TUC-CKJ
vs.                           )
                              )     **ORDER**
CHARLES L. RYAN et al.,       )
                              )
        Respondents.          )
_____)

Pending before the Court is the Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Kenneth G. Hunter ("Hunter"). Respondents have filed an Answer and Hunter has filed a reply. Also pending before the Court is Hunter's Declaration for Entry of Default Judgment (Doc. 20); a response has been filed.

*Factual and Procedural Background*

The Court of Appeals of Arizona summarized the factual background as follows:

> . . . The victim had left his car engine on as he filled his tires at a convenience store gas station when a man entered the car and began to drive it away. The victim attempted to stop the vehicle by running in front of it, but the thief drove the car toward the victim so he had to jump out of the way to avoid being hit.
>
> Hunter's girlfriend testified that she and Hunter had walked to the convenience store to buy a drink, that she had gone into the store and used the restroom, but that when she came out about ten minutes later, Hunter was gone. As she left the store, she noticed "confusion" and a man "wondering where his car was." A few hours later, Hunter arrived at her apartment with the victim's car, claiming that he had rented it.
>
> Another witness testified that she had seen a man and woman approach the convenience store and linger near the victim's car, watching it. The witness saw the woman walk toward the store and the man enter the car and drive away, nearly hitting

the victim.  Hunter was arrested a few days later, after a sheriff's deputy noticed him trying to pry open the window of the victim's car in a parking lot.

Answer, Ex. A, pp. 2-3; *see* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Wainright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (state court's findings are entitled to a presumption of correctness).

Hunter was convicted of burglary in the third degree, theft by means of transportation by control, and aggravated assault with a deadly weapon or dangerous instrument by a jury in CR-20011998.  In CR-20012488, Hunter pleaded guilty to aggravated assault of a peace officer and endangerment.  The trial court sentenced Hunter to concurrent, aggravated terms of 3 years imprisonment for burglary, 7 years imprisonment for theft of means of transportation, and 15 years imprisonment for aggravated assault. Hunter filed an appeal, and on May 10, 2005, the Arizona Court of Appeals denied his appeal on the merits. Hunter did not seek review of that decision.

Hunter then sought post-conviction relief on July 28, 2006. In the initial and two supplemental petitions that followed, Hunter invoked the following grounds for relief: 1) Hunter's due process and fair trial rights were violated when the trial court did not strike the entire jury panel following an allegation of juror misconduct, 2) newly discovered material facts that would have changed the verdict, 3) Hunter's due process rights were violated by witness testimony elicited under duress, 4) pre-sentence report was inaccurate, 5) ineffective assistance of appellate counsel who did not file a petition for review to the Supreme Court of Arizona, and 6) trial counsel was ineffective in 6 ways: (a) he reported a security violation by Hunter to courthouse security personnel, (b) counsel failed to show Hunter crime scene photographs, (c) counsel did not properly impeach state witness at trial, (d) counsel did not file several of Hunter's *pro se* motions, even though Hunter directed him to file them, (e) counsel did not offer evidence at trial that Hunter owned two vehicles and was employed for

10 years prior to his offenses, and (f) counsel conspired with the State to secure Hunter's conviction.

The post-conviction court found the first claim precluded under state law because Hunter had litigated that claim on direct appeal. The post-conviction court denied the balance of Hunter's claims on the merits. Hunter then sought review from the Arizona Court of Appeals. On November 14, 2008, that court granted review, but denied relief. Hunter did not seek review of that decision.

On January 2, 2009, Hunter filed the pending Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 ("Petition"). Respondents have filed an answer and Hunter filed a reply.

On February 3, 2012, Hunter filed a Declaration for Entry of Default (Doc. 20). A response has been filed.

*Declaration for Entry of Default*

Hunter appears to be requesting entry of default judgment because of Respondents' delay in filing an Answer and the lack of a ruling on Hunter's claims. Entry of default is not appropriate on such bases. Fed.R.Civ.P. 55 (entry of default when respondent has failed to plead or otherwise defend). The Court will deny the request.

*Statute of Limitations*

This Court must review claims consistent with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner must generally file a petition for writ of habeas corpus within one year from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and

made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).

The other subsections not being applicable, Hunter must have filed his habeas petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Hunter's judgment became final on June 9, 2005. *See* Answer, Ex. A, and *discussion infra*. Therefore, the one year limitations period started running on June 9, 2005, giving Hunter one year from that date (in the absence of tolling) to file a federal habeas corpus petition. Hunter filed the instant habeas corpus petition on January 22, 2009. Thus, absent statutory or equitable tolling, Hunter's habeas petition would be clearly outside the AEDPA statute of limitations.

*Statutory Tolling of Limitations Period*

In order to qualify for statutory tolling of the limitations period, Hunter must properly file an "application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." *See* 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled while that application is "pending." *See id; see also Pace v. Diguglielmo*, 544 U.S. 408, 409, 125 S.Ct. 1807, 1808, 161 L.Ed.2d 669 (2005). Hunter filed a petition for State post-conviction relief on July 28, 2006. The proceedings for that petition ended on November 14, 2008. Thus, Hunter is entitled to tolling of the period between the above dates as his petition for post-conviction relief was "pending." However, the one year limitation is not tolled between the time a conviction becomes final in state court and the time that post-conviction relief or collateral attack is initiated, as there is no case "pending" in that time interval. *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999); *see also Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir.2003) (holding that "section 2244(d) does not permit reinitiation of the limitations period that has ended before the state petition was filed."); *Porter v. Ollison*, 620

F.3d 952, 958 (9th Cir. 2010). If a petitioner does not seek review from the State's highest court, his conviction becomes final after the time for seeking such review elapses. 28 U.S.C. § 2244(d)(1)(A); *see also Hemmerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007); *Wixom v. Washington*, 264 F.3d at 898. The time to seek review from the state's highest court is determined by state law. *Wixom,* 264 F.3d at 898. In Arizona, a petitioner has 30 days to seek review from the Arizona Supreme Court of a decision issued by the Arizona Court of Appeals. Ariz. R. Crim. P. 31.19(a).

Here, Hunter sought review from the Arizona Court of Appeals and that court affirmed Hunter's convictions and sentences on May 10, 2005. Because Hunter did not seek review from the Arizona Supreme Court, his conviction became final 30 days after the Arizona Court of Appeals' decision; that day was June 9, 2005. Thus, the AEDPA one year statute of limitations started running on June 9, 2005. (*See* 28 U.S.C. § 2244(d)(1)(A)). Hunter filed a petition in state court for post-conviction relief on July 28, 2006, which was 49 days after the one year AEDPA limitation ran. The state-court post-conviction proceedings ended on November 14, 2008, and Hunter filed the federal habeas corpus petition on January 22, 2009. This placed his petition another 69 days outside the one year statute of limitations. Overall, Hunter's habeas corpus petition is 118 days late and no statutory tolling applies to those days.

*Equitable Tolling of Limitations Period*

The United States Supreme Court has determined that 28 U.S.C. § 2244(d) "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, — U.S. — , 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010). Tolling is appropriate when "extraordinary circumstances" beyond a petitioner's control make it impossible to file a petition on time. *Id.* at 2562; *see Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002) ("the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule" (citation omitted and brackets in original)). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of

1   limitations may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999); *see*

2   *also Harris v. Carter*, 515 F.3d 1051, 1054-57 (9th Cir. 2008).  Further, a petitioner must

3   also demonstrate that he pursued his rights diligently in the state courts.  *Pace*, 544 U.S. at

4   418.

5          Because the threshold for equitable tolling is very high, the Ninth Circuit Court of

6   Appeals applies this doctrine only sparingly.  *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008,

7   1011 (9th Cir. 2009); *Miranda*, 292 F.3d at 1066 ("the threshold necessary to trigger

8   equitable tolling [under the AEDPA] is very high, lest the exceptions swallow the rule").

9   Thus, a petitioner has a "heavy burden" to prove: "(1) that he has been pursuing his rights

10  diligently, and (2) that some extraordinary circumstance stood in his way." *Chaffer v.*

11  *Prosper*, 592 F.3d 1046, 1048 (9th Cir. 2010) *quoting Pace*, 544 U.S. at 418.

12         The determination whether factors exist that suggest "extraordinary circumstances"

13  is highly fact-intensive and district courts are best suited to evaluate the legal significance

14  of those factors.  *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (per

15  curiam).  Not only must Hunter show some factors that amount to "extraordinary

16  circumstances," but he must also establish that those factors proximately caused his

17  untimeliness.  *Ramirez. v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009).  Although a *pro se*

18  petitioner bears the burden of substantiating an equitable tolling claim with evidence, district

19  courts should not impose "extraordinarily high evidentiary standards" on *pro se* petitioners

20  in order to ensure their fair access to the courts. *Lott v. Mueller*, 304 F.3d 918, 924 (9th Cir.

21  2002); *see also Carjasso v. Ayers*, 278 F.3d 874, 877-78 (9th Cir. 2002) (holding that the

22  district court erred in rejecting Carjasso's petition due to a technical error on the cover sheet).

23         In this case, Hunter has the burden of showing that: 1) he pursued his rights diligently,

24  and 2) that some extraordinary circumstance stood in his way. *Pace*, 544 U.S. at 418. Hunter

25  claims three legally cognizable grounds that could potentially entitle him to equitable tolling

26  but only provides some evidence for one of them. The alleged grounds are: attorney

27  negligence in failing to initiate post-conviction relief on Hunter's behalf within the AEDPA

28  one year limitation, "constant" transfer from one penal institution to another, and lack of

access to law library materials.  Hunter provides some evidence only for the first ground; he provides an affidavit from his former attorney, Patrick Coppen, who represented him in state court, in which the attorney acknowledges that he was negligent and did not file Hunter's request for post-conviction relief within the one year AEDPA limitations period. Nonetheless, attorney negligence in filing timely petitions is not sufficient for equitable tolling. *Maples v. Thomas*, — U.S. —, 132 S.Ct. 912, 923 (2012) ("the Court recognized [in *Holland*] that an attorney's negligence, for example, miscalculating a filing deadline, does not provide a basis for tolling a statutory time limit"); *Porter,* 620 F.3d at 959; *see also Randle v. Crawford*, 604 F.3d 1047, 1058 (9th Cir. 2010); *Spitsyn v. Moore*, 345 F.3d 796, 800 (9th Cir. 2003); *Frye v. Hickman*, 273 F.3d 9944 (9th Cir. 2001). Attorney negligence would not toll the limitations period regardless whether such negligence that resulted in a missed deadline occurred during representation at the post-conviction relief stage in state court or in federal court. *See Randle,* 604 F.3d at 1058 (holding that to the extent that counsel's negligence in filing timely petitions in state court resulted in petitioner's missing a deadline in federal court also, counsel's negligence in miscalculating deadlines for habeas petitions does not constitute "extraordinary circumstance" that would trigger equitable tolling); *see also Holland*, 130 S.Ct. at 2564 (attorney negligence, as opposed to abandonment, does not provide a basis for tolling).  Moreover, the Supreme Court has determined that attorney negligence in miscalculating deadlines is not sufficient for equitable tolling especially at the post-conviction stage in which there is no constitutional right to counsel. *Lawrence v. Florida*, 549 U.S. 327, 336-37, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007); *see also Miranda*, 292 F.3d at 1063 (holding that Miranda's reliance upon his attorney's erroneous advice regarding the proper date to file a habeas corpus petition did not trigger the application of equitable tolling).

Only in cases in which the attorney's conduct is particularly "egregious," such conduct may constitute an "extraordinary circumstance" that would justify equitable tolling. *See Spitsyn*, 345 F.3d at 801 (attorney's conduct was found "egregious" where he utterly failed to prepare and file a habeas petition and where he refused to return his client's file

1  until two months after the statute of limitations ran); *see also Porter*, 620 F.3d at 960

2  (attorney's conduct was egregious where the attorney was running a "writ mill" by filing

3  over 50 petitions for habeas corpus while not preparing or respecting deadlines for any of

4  them and where he held on to petitioner's file despite the latter's repeated requests for it).

5  Here, based on the affidavit provided by Hunter's attorney, one could conclude that the

6  attorney was negligent in pursuing Hunter's case, but the facts presented do not suggest that

7  his conduct was "egregious."  The attorney stated that he had some health problems that

8  prevented him from responsibly discharging his duty to Hunter.  He also states that the delay

9  in filing Hunter's post-conviction relief claim was due to some filing error as "no calendaring

10 of the required filing was ever done."  Hunter provides no other evidence to suggest

11 egregious conduct.  For example, he does not claim that his attorney refused to release his

12 file thus preventing him from pursuing his petition on his own.  The Court finds that the

13 attorney's conduct here does not present an extraordinary circumstance.

14     Hunter lists other factors that might rise to the level of "extraordinary circumstances,"

15 but does so only in a conclusory manner and provides no evidence to show that the factors

16 existed or that they proximately caused his tardiness.  Hunter claims that he was "constantly"

17 moved from one penal institution to another; he also claims lack of access to the law library.

18 Although he provides a copy of a notice of change of address, that notice is dated March 5,

19 2010, long after the statute of limitations expired.  Hunter does not provide any dates or time

20 intervals for other alleged transfers, nor does he provide any dates or time intervals in which

21 he had no access to law library materials.  Even if the Court were to consider that a search

22 on the Arizona Department of Corrections website shows that Hunter was

23 reclassified/admitted once during the year leading up to the statutory filing deadline of June

24 9, 2006, this transfer alone would not warrant a finding of extraordinary circumstances.[1]  In

25 cases where prison transfers and lack of access to the law library materials were considered

26

27     [1]The Court notes that the Arizona Department of Corrections website indicates that

28 Hunter was reclassified/admitted on February 21, 2006.  This reclassification/admission may mean that Hunter was transferred on this date.

"extraordinary circumstances" petitioners provided proof of the transfers, such as prison logs showing the time period and the reason for transfer or for lack of access to the library. *See Lott*, 304 F.3d at 921 (holding that petitioner's transfer from a prison to another could be "extraordinary circumstance" where petitioner provided a copy of the prison log that showed two transfers, and an affidavit from an employee of the prison he was transferred to, supporting his claim that he had no access to his file for the transfer period); *see also Ramirez*, 571 F.3d at 998 (holding that petitioner's lack of access to any library materials during a period of segregation that followed an inmate attack could constitute "extraordinary circumstance" for the purpose of equitable tolling). Given the common restrictions of the day-to-day prisoner activity, regular limitations on access to library materials would not constitute "extraordinary circumstances" that would trigger equitable tolling considerations. *Id.* at 998. Indeed, in *Hendon v. Walker*, 278 Fed.Appx. 762 (9th Cir. 2008), the court found a petitioner's argument was insufficient to warrant equitable tolling where he asserted that his use of the law library was restricted and he was physically unable to file any habeas petitions. Hunter has provided no details as to how his access to legal materials was limited.

In his reply, Hunter also asserts that his lack of knowledge of the time limits warrants a finding of equitable tolling. However, Hunter's lack of familiarity with the law does not constitute extraordinary circumstances sufficient to toll the limitations period. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir.2006) (affirming denial of equitable tolling because neither the district court's failure to advise the petitioner of the right to amend his petition to include unexhausted claims nor petitioner's inability to correctly calculate the limitations period were extraordinary circumstances warranting equitable tolling); *Ballesteros v. Schriro*, CV-06-675-PHX-EHC (MEA), 2007 WL 666927 (D.Ariz., February 26, 2007) (noting that a petitioner's pro se status, ignorance of the law, lack of representation during the applicable filing period, and temporary incapacity do not constitute extraordinary circumstances), *citing Fisher v. Johnson*, 174 F.3d 170, 714-15 (5th Cir.1999). "[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse

1   prompt filing.'"  *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir.2000), *quoting Fisher v.*
2   *Johnson*, 174 F.3d 710, 714 (9th Cir.1999).

3        Furthermore, this Court finds that Hunter has not shown that he diligently pursue his
4   claim.  Indeed, Hunter does not claim, nor does he provide any evidence showing, that he
5   tried to pursue his claim on his own given his counsel's negligence.  *See e.g. Holland*, 130
6   S.Ct. at 2565 (district court was incorrect in finding lack of diligence where petitioner wrote
7   numerous letters to attorney seeking information, repeatedly contacted courts, clerks, and
8   state bar association in attempt to have attorney removed from case, and prepared *pro*
9   *se* petition immediately upon learning attorney had missed deadline).  Hunter had one year
10  after his conviction became final in state court to pursue his habeas corpus petition.  Thus,
11  Hunter had enough time to find another attorney or to file a petition for post-conviction relief
12  on his own.  It is Hunter's burden to establish equitable tolling and he has not provided
13  enough evidence to show that he is entitled to equitable tolling.  Hunter has failed to meet
14  the "very high threshold," *United States v. Battles*, 362 F.3d 1195, 1197 (9th Cir. 2004), of
15  establishing that extraordinary circumstances beyond his control made it impossible for him
16  to timely file a habeas petition *and* that those extraordinary circumstances were the cause of
17  his untimeliness.  Rather, it appears that Hunter's lack of diligence caused his failure to meet
18  the AEDPA's one year statute of limitations.  *See Miles,* 187 F.3d at 1107 (equitable tolling
19  is only appropriate where "external forces, rather than a petitioner's lack of diligence,
20  account for the failure to file a timely claim").

21       The Court finds that Hunter has failed to establish that he is entitled to equitable
22  tolling.  Hunter's habeas petition, therefore, is untimely.[2]

23

24  *Certificate of Appealability ("COA")*

25       Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the

26

27       [2]The Court notes that the Answer presents additional arguments against the Petition.
    Because the Court has determined that the Petition is untimely, the Court declines to address
28  the additional arguments.

- 10 -

1  "district court must issue or deny a certificate of appealability when it enters a final order
2  adverse to the applicant." Such certificates are required in cases concerning detention arising
3  "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking
4  a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1). Here, the Petition is
5  brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court
6  judgment. This Court must determine, therefore, if a COA shall issue.

7      The standard for issuing a COA is whether the applicant has "made a substantial
8  showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district
9  court has rejected the constitutional claims on the merits, the showing required to satisfy §
10  2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would
11  find the district court's assessment of the constitutional claims debatable or wrong." *Slack*
12  *v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). "When the district
13  court denies a habeas petition on procedural grounds without reaching the prisoner's
14  underlying constitutional claim, a COA should issue when the prisoner shows, at least, that
15  jurists of reason would find it debatable whether the petition states a valid claim of the denial
16  of a constitutional right and that jurists of reason would find it debatable whether the district
17  court was correct in its procedural ruling." *Id.* In the certificate, the Court must indicate
18  which specific issues satisfy the showing. *See* 28 U.S.C. § 2253(c)(3).

19      This Court has determined that the Petition is untimely under one-year statute of
20  limitations of the Antiterrorism and Effective Death Penalty Act and that the Petition is not
21  subject to statutory or equitable tolling. The Court finds that jurists of reason would not find
22  it debatable whether the Petition stated a valid claim of the denial of a constitutional right and
23  the Court finds that jurists of reason would not find it debatable whether the district court was
24  correct in its procedural ruling. A COA shall not issue as to Hunter's claims.

25      Any further request for a COA must be addressed to the Court of Appeals. *See* Fed.
26  R.App. P. 22(b); Ninth Circuit R. 22-1.

27      Accordingly, IT IS ORDERED:

28      1.      Hunter's Declaration for Entry of Default (Doc. 20) is DENIED.

- 11 -

1     2.      Hunter's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is

2  DENIED;

3     3.      This matter is DISMISSED with prejudice, and;

4     4.      The Clerk of the Court shall enter judgment and shall then close its file in this

5  matter.

6     DATED this 15th day of March, 2012.

7

8

9  _____

Cindy K. Jorgenson

10  United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28